Jon D. Graves, Legal Counsel, SC #10554
Hutchinson Correctional Facility
P.O. Box 1568
Hutchinson, KS 67504-1568
Telephone: (620) 625-7253
Jon.Graves@ks.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| DALE J. TERRELL ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 25-3003-JWL |
| ) | |
| (FNU) MUNK, et al., ) | |
| ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**SUPPLEMENTAL REPORT IN "MARTINEZ v. AARON" INVESTIGATION**

**CIVIL RIGHTS COMPLAINT**

On April 22, 2025, a Martinez report was filed by the interested party Kansas Department of Corrections. (Doc. 14)

On May 5, 2025, plaintiff filed a motion to amend his complaint and a motion for additional Martinez Report information. (Doc. 20 & 21)

Plaintiff was allowed to supplement his complaint to add three new parties and to dismiss Jeremy Baker from the lawsuit. (Doc. 20).

In plaintiff's motion for additional information to be added to the original Martinez Report filed in this case, plaintiff sought the addition of photographs he indicates were periodically taken of him following the use of force on September 30, 2024. Plaintiff also attached a page that was missing from a grievance (Exhibit 12), as noted by the interested party at page 21 of the Martinez Report. (Doc. 21)

On May 6, 2025, the Court issued an order permitting plaintiff to supplement his complaint with three new defendants, David Younger, David Tudor and Moshe Goldman, and one defendant, Jeremy Baker, was removed as a party at plaintiff's request. The Court granted plaintiff's requests to add to the report. (Doc. 22)

Accordingly, this supplement will include statements under oath by the three new parties, the missing page to Exhibit 12 in the original and, as requested by plaintiff, a group of photos taken of him after the first use of force, when he was placed on the restraint bed, after he was removed from the restraint bed and over the next two days.

## STATEMENTS OF THREE NEW DEFENDANTS REGARDING THE SECOND USE OF FORCE ON SEPTEMBER 30, 2024

**Moshe Goldman**

Correctional Officer IB Moshe Goldman was involved with the second use of force conducted against plaintiff at just after 5 p.m. made necessary after plaintiff damaged and flooded his cell. This officer saw that plaintiff had the weapon in his hand in the form of the metal receptacle cover and attached materials. This officer couldn't see or hear everything, but did observe plaintiff's threatening behavior and witnessed the attempts of Corrections Officer Tania Zubia to negotiate with plaintiff to reach a peaceful resolution and saw those efforts fail.

When the negotiations failed, the team quickly entered the cell with Kenneth Swinney entering first because he had the shock shield. Swinney immediately knocked plaintiff down and stayed on top of plaintiff, shocking him intermittently. Officer Goldman was responsible for restraining plaintiff's ankles and putting restraints on them, which he did. Plaintiff had made himself wet and slippery. Goldman notes that while plaintiff was being shocked with the shield, so were the officers in contact with him.

Goldman did not see anything in Mr. Swinney's conduct that would suggest Swinney was attempting to hurt plaintiff, but could imagine that Swinney was also experiencing difficulty in keeping the shield steady due to the circumstances. Goldman did not see anything that would suggest Swinney was trying to hurt plaintiff with the shield nor did Goldman see anything about Swinney's conduct that would have compelled Goldman to interfere with Swinney's conduct. Everyone appeared to be following their training to minimize trauma to plaintiff.

After plaintiff was moved to another cell, his ankle restraints were removed and plaintiff started banging his head on the cell wall. Plaintiff was again restrained and placed on the clinical restraint bed until he settled down (Exhibit S-1)

**<u>David Tudor</u>**

Mr. Tudor was involved with the second use of force conducted involving plaintiff at 5 p.m. on September 30, 2024. Following failed negotiations to peacefully switch cells, the team entered the cell with Kenneth Swinney as the first person in with the shock shield. Tudor was the third man in and was responsible for controlling plaintiff's right arm and did so until it was restrained. Tudor was on plaintiff's right side trying to control him, but was able to observe Mr.

Swinney and his use of the shock shield. Tudor did not see anything that suggested any need to restrain Swinney's behavior. The team was trying to restrain plaintiff without hurting him.

Once plaintiff was placed in a wheelchair and moved to the different cell, his ankle restraints were removed. Plaintiff was supposed to back up to the bars to have his handcuffs removed, but instead he pulled on them after one had been removed, injuring Tudor's left index finger. The team re-entered the cell to calm plaintiff. Tudor left the cell and plaintiff began banging his head on the wall and the team again entered the cell to calm plaintiff. Plaintiff was then moved into the restraint bed nearby until he could safely be unrestrained. (Exhibit S-2)

### **David Younger**

Corrections Officer IB David Younger was also involved in the second use of force on plaintiff at about 5 p.m. on September 30, 2025. After negotiations failed and the team entered the cell which plaintiff was in, Younger was responsible for controlling plaintiff's left leg and successfully was able to restrain his left ankle until restrained. Younger noted that plaintiff was wet, struggling and slippery. Younger did not see plaintiff being injured by the shock shield and did not see any conduct by Kenneth Swinney that was not appropriate.

After plaintiff was restrained and moved to the Close Observation Unit, Younger saw plaintiff strike his head against the wall three times and indicate he was going to commit suicide by striking his head on the toilet as soon as the team left. After that the team stayed around, trying to calm plaintiff. Then the healthcare provider changed plaintiff's mental health status to Crisis Level 4. Younger helped escort plaintiff into the cell with the restraint bed where Younger observed plaintiff being placed into the bed and secured. (Exhibit S-3)

**Miranda Schmidt**

Miranda Schmidt is a special agent with the Enforcement Apprehension and Investigations department at the Larned State Correctional Facility. She is the keeper of the record of the photographs taken of plaintiff following the uses of force on September 30 and on the two days following. Those photos will be identified chronologically and attached to this affidavit. .(Exhibit S4 and attachments)

**Grievance Document**

As noted in the original Martinez Report, Exhibit 10 was missing the warden's response. Plaintiff had the page and submitted it to be included in the report. That page should be regarded as properly incorporated into Exhibit 10. (Exhibit S-5)

## CONCLUSION

The three officers who were present for that second use of force did not see anything in Kenneth Swinney's behavior that compelled them to become involved with restraining Swinney's behavior.

          Respectfully submitted,

          /s/ Jon D. Graves
          Jon D. Graves #10554

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2025, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following: Attorney General, Memorial Bldg., 2nd Floor, 120 S.W. 10th Ave., Topeka, KS 66612-1597 and by mailing a copy to:

Dale Terrell #92440
Larned State Correctional Facility
1318 KS Highway 264
Larned, KS  67550-9304

/s/ Jon D. Graves
Jon D. Graves

## EXHIBIT LIST

S-1.   Affidavit of Moshe Goldman
S-2.   Affidavit of David Tudor
S-3.   Affidavit of David Younger
S-4.   Affidavit of Miranda Schmidt
S-5.   Page of Grievance IA-003410 missing from original document

I, Jon D. Graves, certify that the attached are true and correct copies of records kept in the normal course of business by the Kansas Department of Corrections and the published Kansas Statutes Annotated, Kansas Administrative Regulations, Kansas Department of Corrections Internal Management Policy and Procedures, and Larned State Correctional Facility General Orders

/s/ Jon D. Graves_____                                        ___May 19,  2025__
Jon D. Graves                                                              Date

Subscribed and sworn to before me this 19th day of May, 2025.

__/s/ Rhonda K. Severin_____
Notary Public

My Commission Expires:  _11-18-2026____